FILED
2015 Jun-29 PM 03:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LINEWORKS ENGINEERING, LLC, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Case No. 2:14-cv-02018-HGD |
| ) | |
| AERIAL SURVEYING, INC., ) | |
| ) | |
| Defendant ) | |

## REPORT AND RECOMMENDATION

The above-entitled civil action is before the court on the Motion to Remand filed by plaintiff. (Doc. 6). This matter was removed from the Circuit Court of Jefferson County by defendant, Aerial Surveying Inc. (ASI) on October 14, 2014. Defendant asserts that there is complete diversity of citizenship between the parties and that the amount in controversy exceeds $75,000, in compliance with 28 U.S.C. § 1332(a). (Doc. 1, Notice of Removal). A motion to remand was filed by plaintiff, Lineworks Engineering, LLC (Lineworks) on November 19, 2014, asserting that the amount in controversy reflected on the face of the complaint does not exceed the jurisdictional amount of $75,000. (Doc. 6, Motion to Remand).

I.      **The Complaint**

The complaint sets out five separate counts as plaintiff's bases for relief.  In summary, the complaint reflects that in early 2013, Lineworks was hired by a non-party, Maui Electric Company, Inc. (MECO), to provide engineering consulting and design services for several of its transmission lines, including a ground survey and an aerial LiDAR[1] survey of 33 miles of transmission lines.  Lineworks and MECO agreed that Lineworks would subcontract the ground and aerial surveys.  (Doc. 1, Complaint, at ¶ 3).  In August 2013, Lineworks retained two Hawaiian companies to perform the surveys.  It retained ASI for the aerial LiDAR survey.  The other work was to be performed by non-party Austin, Tsutsumi & Associates, Inc. (ATA).  (*Id.* at ¶ 4).

Lineworks and ASI executed a Subcontrator Master Agreement (SMA) which provided that, in the event of default, the defaulting party would reimburse the non-defaulting party for all costs and expenses reasonably incurred by the non-defaulting party in connection with the default, including attorney fees.  (*Id.* at ¶ 6(a)).  It further

---

[1] Although not defined in the complaint, LiDAR is a remote sensing technology that measures distance by illuminating a target with a laser and analyzing the reflected light.  It is commonly used to make high-resolution maps, with applications in geomatics, archaeology, geography, geology, geomorphology, seismology, forestry, remote sensing, atmospheric physics, airborne laser swath mapping (ALSM), laser altimetry and contour mapping. Cracknell, Arthur P.; Hayes, Ladson (2007) [1991]. *Introduction to Remote Sensing* (2 ed.). London: Taylor and Francis. ISBN 0-8493-9255-1. OCLC 70765252.

provided that any dispute arising out of the SMA or any Work Authorization issued thereunder would be brought in the State of Alabama in a court of competent jurisdiction. (*Id.* at ¶ 6(b)).

Subsequently, Lineworks and ASI executed two Work Authorizations under the MSA wherein ASI agreed to provide Lineworks with certain data in particular formats and meeting certain requirements. Lineworks agreed to a flat fee of $1,900 per mile, for a total cost of $62,700. The Work Authorizations listed a work begin date of September 16, 2013, and a work completion date of October 15, 2013. (*Id.* at ¶ 8). Lineworks, ASI and ATA mutually agreed that ASI would conduct its aerial survey on September 16, 2013, which required ATA to complete its ground survey prior to that date. ATA completed the ground survey on September 4, 2013. (*Id.* at ¶ 9).

In order to complete the project, ASI required certain equipment rentals, including a helicopter, helipod, LiDAR equipment and weather stations. ASI agreed to schedule the helicopter, helipod and LiDAR rental equipment, as those costs were included in ASI's quote to Lineworks. Lineworks agreed to schedule the weather station rentals. As a result, Lineworks entered into a rental contract with InterMountain Environmental, Inc. (IME) on September 4, 2013. IME shipped the weather station equipment to Lineworks on September 9, 2013. (*Id.* at ¶ 10).

Subsequently, ASI failed to secure the helipod and LiDAR equipment rentals and could not perform the aerial survey on September 16, 2013. Because shipping costs for the weather stations were over $1000, Lineworks kept the stations in Maui rather than return them to IME because they would only have to re-rent them later. Lineworks asserts that ASI's failure to timely procure the helipod delayed the aerial LiDAR survey. According to the complaint, ASI caused further delay of the LiDAR survey because ASI failed to follow an important provision of the SMA, although this defect was rectified by ASI. (*Id.* at ¶ 11).

Lineworks and ASI executed revised Work Authorizations to reflect a new work begin date and a new work completion date. The revised begin date was October 7-11, 2011, with a filed completion date of October 11, 2013, and a work completion date of November 15, 2013. (*Id.* at ¶ 12).

The revised Work Authorization required ASI to provide Lineworks, by the November 15, 2013, completion date, with geo-referenced orthophotography with a minimum resolution of 1 pixel = 0.25 feet, a properly feature-coded and time-stamped data via CD, DVD or external hard drive, and certain other information. (*Id.* at ¶ 13).

On October 3, 2013, ASI billed Lineworks for $25,080, which was 40% of its overall quoted fee. Lineworks paid this invoice. While ASI performed the LiDAR survey on October 10, 2013, it failed to deliver the data or deliverables to Lineworks

on the stated completion date of November 15, 2013. (*Id.* at ¶ 14). On December 7, 2013, ASI sent Lineworks a web link to its data files, but the Revised Work Authorization required such data to be submitted via CD, DVD or external hard drive. Likewise, on December 31, 2013, ASI sent Lineworks a screen shot of the LiDAR coverage taken from the previously emailed web link to its data files. However, the Revised Work Authorization required such data to be submitted via CD, DVD or external hard drive. (*Id.* at ¶ 15).

In addition, Lineworks alleges that ASI failed to properly format and process the required data despite repeated requests, failed to include proper vectoring of the data as required by the Revised Work Authorization, failed to code the required data despite repeated requests, failed to deliver data at the proper 1 pixel = 0.25 feet resolution, as required, and failed to deliver data with proper measurement units, despite repeated requests. (*Id.* at ¶ 16).

Lineworks notified ASI of its defaults under the contract on April 21, 2014, and May 15, 2014. On June 26, 2014, it made a final attempt to resolve its issues with ASI. (*Id.* at ¶ 17). Since June 26, 2014, Lineworks has received additional data from ASI, all of which was incomplete or incorrect. Lineworks advised ASI that it intended to terminate the contract for cause on several occasions. (*Id.* at ¶ 18). Lineworks asserts that ASI failed to fulfill its obligations under the SMA or Revised

Work Order.  (*Id.* at ¶ 19).  As a result, Lineworks claims that it suffered monetary damages and possible loss of goodwill and business reputation from its other business partners, including MECO, due to ASI's failure to complete the work contracted in the SMA and Revised Work Agreement.  (*Id.* at ¶ 20).

In Count I of its complaint, Lineworks alleges that ASI is liable for negligence, in that it breached its duty to Lineworks by negligently making errors and omitting important features in its performance of its professional abilities as a subcontractor in this industry.  (*Id.* at ¶ 22).  In this count, Lineworks asserts that it has suffered monetary damages, but does not claim a specific amount in damages.  (*Id.* at ¶ 23).

Count II alleges wantonness.  Lineworks alleges that ASI acted wantonly in its conscious disregard for the requirements of providing Lineworks with quality engineering work product in a timely fashion.  (*Id.* at ¶ 25).  According to Lineworks, ASI was aware that its failure to procure certain aerial survey equipment rentals would directly cause Lineworks to incur additional rental expenses for the weather stations.  Nonetheless, according to Lineworks, ASI caused two separate delays, each causing injury to Lineworks.  However, Lineworks does not state the cost of these delays.

Count III alleges breach of contract.  In this claim, Lineworks asserts that ASI failed to complete its work by the contractual deadlines as set forth in the Work

Authorizations, failed to comply with the specifications and formatting requirements for orthophotography digital image resolution, instead submitting images of a resolution such that they were not usable for Lineworks' intended purposes, and failed to comply with the specifications and formatting requirements for its data processing as set forth in the Work Authorizations. (*Id.* at ¶ 31). Lineworks states that it has suffered monetary damages as a direct result of ASI's breach but does not state a specific dollar amount of damages.

Count IV asserts that ASI intentionally interfered with Lineworks' business relationship with MECO by its repeated failures to meet its own contractual deadlines in the Work Authorizations. This caused Lineworks to miss its own contractual deadlines with MECO, resulting in damage to its business relationship and goodwill with MECO. (*Id.* at ¶¶ 36-37). Lineworks does not request or state that it has suffered any specific money damages in the body of this count.

In Count V, Lineworks seeks a declaratory judgment stating that (a) Lineworks owes no monetary amounts to ASI under the Subcontract Master Agreement or the Work Authorizations, and (b) Lineworks is free from all obligations under the Subcontractor Master Agreement and Work Authorization. (*Id.* at ¶ 41).

In a paragraph titled "Damages," plaintiff states that it has already incurred actual damages in the amount of $25,080.00, which was paid to ASI as a down

payment for services performed under the Work Authorizations. It also claims that it has incurred actual damages of $3,126.60, which was paid to IME for additional weather station rental fees. It claims that there are also additional rental expenses that are attributable to ASI's failure to timely procure the helipod and the LiDAR equipment by the contracted-for aerial survey date. It also alleges that it has already incurred actual damages of approximately $18,750.00, which was paid in hourly wages to its engineers for their review and translation of piecemeal data submitted to ASI, which was ultimately determined to be incorrect and unusable. (*Id.* at ¶44).

Lineworks also claims that it has incurred attorneys' fees and costs as a result of ASI's conduct and has suffered, and will continue to suffer, damages to its goodwill and business relationship with MECO, as a direct result of ASI's conduct. Plaintiff requests that it be awarded "all actual monetary damages due under the law" to compensate it for its loss a the hands of ASI. It also requests punitive damages. (*Id.* at ¶ 45).

## II. Discussion

Defendant asserts that the motion to remand is due to be denied on the basis that the demand for punitive damages and attorneys' fees, in conjunction with the

$46,956.60^2$ in compensatory damages, surpasses the $75,000.00 threshold. Defendant then references several jury verdicts far more than the $28,043.41 needed to meet the threshold amount in addition to that claimed as compensatory damages. Defendant also notes several cases where Alabama state courts have awarded attorneys' fees in excess of this amount. (See Doc.1 at Exs. 3 & 4).

Although the complaint in this case asks for specific compensatory damages, it does not make a demand for a sum certain in punitive damages, interference with its business relationship or attorneys' fees. Because this case was first filed in state court and removed to federal court by ASI, ASI bears the burden of establishing federal jurisdiction. *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001). When the complaint does not claim a specific amount of damages, "the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." *Id*.

If a defendant alleges that removability is apparent from the face of the complaint, the district court must evaluate whether the complaint itself satisfies the defendant's jurisdictional burden. In making this determination, the district court is not bound by the plaintiff's representations regarding its claim, nor must it assume

---

[2] While defendant states in its opposition to the motion to remand that plaintiff has claimed compensatory damages of $46,959.60, the sums specifically sought by plaintiff as compensatory damages total $46,956.60.

that the plaintiff is in the best position to evaluate the amount of damages sought. Indeed, in some cases, the defendant or the court itself may be better-situated to accurately assess the amount in controversy. *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (internal citations omitted). District courts are allowed to make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings to determine whether there is facially apparent that a case is removable. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010). A district court need not "suspend reality or shelve common sense in determining whether the face of a complaint . . . establishes the jurisdictional amount." *See id.* at 770 (quoting *Roe v. Michelin N. Am., Inc.*, 637 F.Supp.2d 995, 999 (M.D.Ala. 2009)); *see also Best Buy*, 269 F.3d at 1319 (allowing district courts to consider whether it is "facially apparent" from a complaint that the amount in controversy is met). Instead, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements. This approach is consistent with those of other circuits. *Roe*, 613 F.3d at 1062.

In addition to a request for monetary damages, the complaint requests a declaratory judgment wherein Lineworks seeks to avoid any obligation under the contract between the parties. One principle is well-settled, and apparently overlooked

by the parties: for actions seeking a declaratory judgment, the measure of the amount in controversy is "the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Occidental Chem. Corp. v. Bullard*, 995 F.2d 1046 (11th Cir. 1993). In this case, it is undisputed that the value of the contract that plaintiff seeks to avoid is $62,700.00. Therefore, this is the amount in controversy for purposes of the declaratory judgment count.

Under the breach of contract claim, plaintiff seeks compensatory damages, including $25,080.00 paid in advance as part of the total $62,700.00 contract price. It also seeks $3,126.60 for additional weather station fees and $18,750.00 paid in hourly wages to its engineers for their review and translation of piecemeal data submitted by ASI, which was ultimately determined to be incorrect and unusable.

For purposes of determining the amount in controversy, the $25,080.00 paid under the contract is subsumed by the $62,700.00 amount, which is the value of the declaratory judgment action. Therefore, this amount is not counted for purposes of the amount in controversy. However, the remaining compensatory damages are not subsumed by the declaratory judgment amount. That total amount is $21,876.60. This would raise the total amount in controversy to $84,576.60 ($62,700.00 + $21,876.60 = $84,576.60).

In addition, even assuming that the additional $21,876.60 should not be combined with the declaratory judgment value to reach an amount in controversy, there is still the matter of attorneys' fees. In order to reach the jurisdictional amount of $75,000.01, plaintiff would have to receive attorneys' fees of $12,300.01.[3] The court takes judicial notice that, in Huntsville, Alabama, the going hourly rate for attorneys with the experience of lead plaintiff's counsel, Jeremiah Hodges, would be at least $350.00 per hour.[4] In order to exceed the jurisdictional amount, this would require that Mr. Hodges spend no more than 36 hours on this case (36 x $350.00 = $12,600.00). The court's own experience with such matters reflects that Mr. Hodges will easily put more than 36 hours into this case and, in fact, he probably already has done so. In addition, in order to reach the jurisdictional amount from just the compensatory damages claimed, $46,956.60, plaintiff would need to put only slightly over 80 hours of work into this case ($28,043.41 ÷ $350.00 = 80.12). This also is not an unlikely event, based on the court's experience in such matters. Consequently, the addition of attorneys' fees makes it more likely than not that the amount in controversy is above the $75,000 jurisdictional amount.

---

[3] Attorneys' fees are only considered in determining the amount in controversy when they are provided for by the contract or by statute. The parties agree that the contract provides for attorneys' fees.

[4] According to the Alabama State Bar website, Mr. Hodges has over ten years of experience practicing law.

Although defendant cites a number of cases with regard to punitive damages, it provides nothing in the way of facts to show that the cases cited are in any way similar to the case at bar. In fact, the cases cited refer to tort claims, rather than contractual disputes. ASI has offered no evidence to show that Lineworks' wantonness claim would satisfy the amount in controversy. ASI does point to a number of Alabama cases where courts have awarded punitive damages well in excess of $75,000 for bad faith failure to pay, but mere citation to what has happened in the past does nothing to overcome the indeterminate and speculative nature of ASI's assertion in this case. Consequently, the cases submitted by defendant regarding punitive damages contribute nothing to the determination of the amount in controversy. *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 809 (11th Cir. 2003).

Nonetheless, punitive damages must be considered in determining the amount in controversy, "unless it is apparent to a legal certainty that such cannot be recovered." *Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987); *see also Allen v. Toyota Motor Sales, U.S.A., Inc.*, 155 Fed.Appx. 480, 482 (11th Cir. 2005) (finding the amount in controversy requirement satisfied because it set out a specified amount of damages–$66,678.65–plus additional unspecified damages sufficient to show "that the amount in controversy might well exceed the

jurisdictional amount."). Based on the facts set out by plaintiff in the complaint, the court cannot say that it is apparent to a legal certainty that Lineworks will not recover anything under its wantonness claim. Furthermore, in the event that punitive damages are returned, it is reasonable that such damages in the amount of $12,300.01 or more would be recovered.

Finally, plaintiff also requests damages for injury to its business relationship with MECO. MECO is a large utility company in Hawaii which provides power for its customers. A business such as Lineworks relies on such companies for its very existence. Consequently, injury to its business relationship with this company could be very damaging to Lineworks' financial well-being. Although an amount is not specified in the complaint, it is reasonable to conclude that such an amount would easily cover the $12,300.01 needed to reach the jurisdictional amount in this case.

### III. Conclusion

The court concludes that the face of the complaint reflects several different ways in which it is more likely than not that the amount in controversy in this case exceeds $75,000. Therefore, it is RECOMMENDED that the motion to remand be DENIED.

## NOTICE OF RIGHT TO OBJECT

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court.  **Any objections to the failure of the magistrate judge to address any contention raised in the complaint also must be included.**  Failure to do so will bar any later challenge or review of the factual findings of the magistrate judge, except for plain error.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B 1982) (*en banc*), *overruled by Douglass v. United Service Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*), *superseded by statute* Federal Magistrates Act, Pub.L. No. 111-16, 123 Stat. 1608 (codified as amended at 28 U.S.C. § 636(b)(1) (2009); *see Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013).  In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions

of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge.

DONE this 29th day of June, 2015.

_____
HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE